Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **GLOBAL EMPIRE CORPORATION,** | : : : | **Civil Action No. 18-8795 (ES) (SCM)** |
| **Plaintiff,** | : : | **OPINION** |
| v. | : : | |
| **FLOWER TECH CENTER, INC.,** *d/b/a* **AVA'S FLOWERS** | : : : | |
| **Defendant.** | : : : | |

**SALAS, DISTRICT JUDGE**

Before the Court is Defendant Flower Tech Center, Inc.'s ("Defendant") motion to dismiss and motion to compel arbitration or in the alternative, stay the proceeding. (D.E. No. 4). The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. The Court has considered the parties' submissions (D.E. Nos. 1 & 4-6) and decides this motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, Defendant's motion to stay the proceeding is GRANTED.

## I.    Background

Global Empire Corporation ("Plaintiff") is a global business located in Alberta, Canada, that provides outsourcing for its clients, including customer sales calls. (D.E. No. 1, Complaint ("Compl.") ¶¶ 2 & 3). Defendant is a company located in Mahwah, New Jersey, that conducts an internet-based florist business under the name Ava's Flowers. (*See Id*. ¶¶ 4 & 5; (D.E. No. 4-1, Defendant's Brief in Support of Motion to Dismiss Plaintiff's Complaint and Compel Arbitration ("Def. Mov. Br.") at 1). On or about January 24, 2017, the parties entered into an agreement (the

"Contract"), attached to the Complaint as Exhibit A (D.E No. 1-1 ("Ex. A")) whereby Plaintiff agreed to provide Defendant with "inbound customer services and sales services." (Compl. ¶ 8). Plaintiff filed this suit contending that Defendant failed to make full payments on amounts owed for the inbound customer service and sales. (*Id*. ¶¶ 20-24 & 29).

In the Contract, Defendant promised to pay Plaintiff $7.00 per hour for outbound and inbound calls. (*Id*. ¶ 10; Ex. A at 12). Plaintiff contends that Defendant agreed to pay Plaintiff for 112 hours per week, over a seven-day period between 7:00am-11:00pm. (*Id*. ¶¶ 12 & 13; Ex. A at 12). Plaintiff further alleges that it initially agreed to reserve twenty seats in its call center for Defendant. (*Id*. ¶¶ 14 & 15; D.E. No. 1-2, Ex. B ¶ 1). On July 1, 2017, the parties amended the agreement to reflect an increase in the seat reservation to seventy seats. (*Id*. ¶ 16; Ex. B ¶ 1). The amended agreement also included an extension for the term of the agreement with a provision for automatic renewal. (*Id*. ¶ 18; Ex. B ¶ 3).

Plaintiff contends that Defendant defaulted on its obligations during the term of the agreement. (*Id*. ¶ 20). To notify Defendant of its nonpayment, Plaintiff served Defendant notices of default on May 25, 2017, July 7, 2017, January 24, 2018, and March 19, 2018. (*Id*. ¶ 21). By March 19, 2018, Defendant's alleged debt to Plaintiff amounted to approximately $66,047.11, which ultimately resulted in an aggregate balance of $1,054,714.00, pursuant to the terms of the Contract. (*Id*. ¶¶ 22-23).

Additionally, Plaintiff alleges that between June 1, 2017 and March 19, 2018, about seventy-five percent of Plaintiff's reserved seats remained empty. (*Id*. ¶ 26). This caused Plaintiff to suffer a financial loss as it could not reallocate Defendant's seats to its other clients or contract with new clients for the seats. (*Id*. ¶ 27). Due to Defendant's alleged failure to fulfill its contractual obligations and Plaintiff's inability to reallocate seats initially reserved for Defendants, Plaintiff

suffered a loss in profits in the amount of $ 3,165,277.50.  (*Id*. ¶¶ 28-29).

On June 1, 2018, Defendant moved to compel arbitration or in the alternative stay this action pursuant to the arbitration agreement in the Contract.  (D.E. No. 4).  Plaintiff opposed Defendant's motion alleging that the arbitration agreement in the Contract is invalid and unenforceable.  (D.E. No. 5, Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint and Compel Arbitration ("Pl. Opp. Br.")).

## II.      Legal Standard

### A.      The Presumption of Arbitrability

The judiciary exercises plenary review over questions regarding the validity and enforceability of an agreement to arbitrate.  *Quilloin v. Tenet HeathSystem Phila., Inc*., 673 F.3d 221, 228 (3d Cir. 2012) (citing *Puleo v. Chase Bank USA, N.A*., 605 F.3d 172, 177 (3d Cir. 2010)).  The Third Circuit has held that "[b]efore a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect."  *James v. Global TelLink Corp*, 852 F.3d 262, 268 (3d Cir. 2017) (citing *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd*., 636 F.2d 51, 54 (3d Cir. 1980)).

The Federal Arbitration Act ("FAA") establishes a strong federal policy in favor of arbitration agreements.  *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018).  The FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract."  9 U.S.C. § 2.  Additionally, under § 3 of the FAA, "when a party files suit in district court "upon any issue referable to arbitration under an agreement in writing for such arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in

accordance with the terms of the agreement." 9 U.S.C. § 3. The Supreme Court has made it clear that "the central or primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms." *Stolt-Nielsen v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 664 (2010) (citations omitted). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or any allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, at 1, 24-25. However, this presumption in favor of arbitration "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)). Not every arbitration agreement will be enforceable. *See Epic Sys. Corp.*, 138 S. Ct. at 1626 (2018).

**B.      Motion to Compel Arbitration**

To determine whether the parties agreed to arbitrate, the Court turns to "ordinary state-law principles that govern the formation of contracts." *First Options of Chic. Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). This is because agreements to arbitration is a matter of contract. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546 (1964). Thus, in deciding whether a party may be compelled to arbitrate under the FAA, a court must determine that (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement. *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014).

As to the first consideration, a district court "must initially decide whether the determination is made under Federal Rule of Civil Procedure 12(b)(6) or 56." *Sanford v. Bracewell & Guiliani, LLP*, 618 Fed. App'x. 114, 117 (3d Cir. 2015). Motions to compel arbitration should be analyzed under a Rule 12(b)(6) standard when arbitrability is apparent on the

- 4 -

face of the Complaint or documents relied upon in the Complaint. *Guidotti v. Legal Helpers Debt Resolution LLC*, 716 F.3d 764, 773-774 (3d Cir. 2013). Where the Complaint does not establish with clarity that the parties have agreed to arbitrate, or when the party opposing arbitration has come forward with reliable evidence that it did not intend to be bound by an arbitration agreement, a Rule 12(b)(6) standard is not appropriate because the motion cannot be resolved without consideration of evidence outside the pleadings, and, if necessary, further development of the factual record. *See id*. at 774. In such circumstances, the Rule 56 standard is appropriate. *Id*.

## III.    Analysis

As an initial matter, the Court must determine which standard of review governs Defendant's motion. This motion presents no need to explore factual issues or matters outside the motion. The Complaint references the relevant facts and language of the Contract in detail and attached the Contract as an exhibit. (*See* Compl. ¶ 9; Ex. A). This motion can be resolved without further development of the factual record. Accordingly, the Rule 12(b)(6) standard governs.

### A.    The Contract Must Be Construed According to Alberta, Canada Law

The express terms of the Contract state that "the laws of Alberta, Canada shall govern this agreement." (Ex. A ¶ 11). Defendant contends that the Contract's choice of law provision governs this action. (*See* Def. Mov. Br. at 1-2). The court agrees with Defendant's contention.

In diversity cases, federal courts apply the choice of law rules of the forum state, which in this case is New Jersey. *Gibbs ex rel. Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 131 (3d Cir. 2002) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc*., 313 U.S. 487 (1941)). New Jersey choice of law rules provide that "ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." *Januszewski v. Advance Auto Parts, Inc*., No. 10-3794, 2012 WL

5465767, at *4 (D.N.J. Nov. 8, 2012) (citing *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992)).

"[T]he public policy exception—intended to protect less powerful parties in asymmetric negotiations—is generally not violated when similarly sophisticated parties have negotiated the choice-of-law provision and the plain language of the policy conveys that both parties intended for the laws of the named state to govern the provisions of the insurance contract." *FIN Assocs. LP v. Hudson Specialty Ins. Co.*, 741 Fed. App'x. 85, 87 (3d Cir. 2018) (citing *Diamond Shamrock Chemicals Co. v. Aetna Cas. & Sur. Co.*, 609 A.2d 440, 460 (App. Div. 1992)).  Choice-of-law provisions will be enforced if the contract was freely entered into by two commercial entities with relatively equal bargaining power.  *See Walters v. Am. Home. Assur.*, No. 09-4637, 2011 WL 4409170, at *8 (D.N.J. Sept. 21, 2011) (upholding a choice-of-law provision in a multistate policy between two equally sophisticated corporations).

In this case, two sophisticated commercial entities have freely entered into a Contract. They agreed at arm's length to be bound by the laws of Alberta, Canada. (*See* Ex ¶ 11 ("[T]he laws of Alberta, Canada shall govern this agreement.")).  Thus, the laws of Alberta, Canada shall govern the Contract. *See Walters*, 2011 WL 4409170, at *8.

### B.    Arbitration Agreements under Alberta, Canada Law

Defendant argues that the arbitration agreement is valid and enforceable because Plaintiff expressly agreed to be bound by the arbitration agreement. (Def. Mov. Br. at 2).  Defendant further argues that under federal law and Alberta, Canada arbitration laws, the Court must dismiss Plaintiff's Complaint and compel arbitration. (*Id*. at 2-10).  In opposition, Plaintiff argues that the arbitration agreement is invalid because "it makes no reference to the waiver of any right to a jury trial, or other resolution process." (Pl. Opp. Br. at 4).  Specifically, Plaintiff contends that the

arbitration agreement "fails to clearly and unmistakably reflect that the parties waive their right to a jury trial or any other resolution process." (*Id*. at 5). Plaintiff further contends that "Canadian law clearly provides that the right to trial by jury is a substantial right, which could not be denied on substantial grounds," and which it has not waived. (*Id*. at 6).

The International Commercial Arbitration Act (the "ICAA") governs international arbitration agreements in Alberta, Canada. *See* International Commercial Arbitration Act, R.S.A. 2000, c I-5, P. 2 § 4(1) - (2). Under the ICAA, an arbitration agreement is "an agreement by the parties to submit to arbitration all or certain disputes which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not [and] may be in the form of an arbitration agreement in a contract or in the form of a separate agreement." *Id*. Sched. 2 art 7(1). The ICAA provides that "[a] court before which an action is brought in a matter which is the subject of an arbitration agreement shall, if a party so requests not later than when submitting his first statement on the substance of the dispute, refer the parties to arbitration unless it finds that the agreement is null and void, inoperative or incapable of being performed." *Id*. Sched. 2 art 8(2).

In addition to the ICAA, arbitration agreements in Alberta, Canada are also governed by the Alberta Arbitration Act (the "Domestic Act"). R.S.A. 2000, c A-43. Subsection 7(1) of the Act states that "if a party to an arbitration agreement commences a proceeding in a court in respect of a matter in dispute to be submitted to arbitration under the agreement, the court shall, on the application of another party to the arbitration agreement, stay the proceeding." *Id*. at § 7(1). The Court has the discretion to refuse to stay the proceeding *only* if: "(a) a party entered into the arbitration agreement while under a legal incapacity; (b) the arbitration agreement is invalid; (c) the subject-matter of the dispute is not capable of being the subject of arbitration under Alberta law; (d) the application to stay the proceeding was brought with undue delay; (e) the matter in

- 7 -

dispute is a proper one for default or summary judgment." *Id*. § 7(2) (emphasis added). Here, the

relevant arbitration agreement states as follows:

> The laws of Alberta, Canada shall govern this agreement. Parties will endeavor to settle any dispute in an amicable manner between them. Disputes that are not settled between the Parties shall resolved exclusively by binding arbitration before the International Centre for Dispute Resolution before three (3) neutral arbitrators in accordance with the International Arbitration Rules of the International Centre for Dispute Resolution. The arbitration shall be conducted in the English language. Either party may apply to the arbitrators) seeking injunctive relief until the arbitration award is rendered or the controversy is otherwise resolved. Notwithstanding the foregoing, Client may also, without waiving any remedy under this agreement, seek from any court having jurisdiction any interim or provisional relief pursuant to Section 6 of this agreement, pending the establishment of the arbitral tribunal (or pending the arbitral tribunal's determination of the merits of the controversy).
>
> The parties shall mutually agree upon the location where the arbitration hearing is to take place and the parties agree that the arbitration proceeding may be conducted by video conference or other remote means pursuant to which the parties and arbitrators are able to view and communicate with each other contemporaneously.
>
> Any award rendered will be final and conclusive upon the parties and a judgment thereon may be entered in any court having jurisdiction.

(Ex. A ¶ 11). Plaintiff does not argue that any of the exceptions outlined by the Domestic Act

apply. Plaintiff has also failed to show that this arbitration provision is "null and void, inoperative

or incapable of being performed." *See* RSA 2000, c I-5, Sched. 2 art 8(2). The Eleventh Circuit

has explained that this provision of the ICAA must be narrowly interpreted as it "limits the bases

upon which an international arbitration agreement may be challenged to standard breach-of-

contract defenses" and thus, it "must be interpreted to encompass only those situations—such as

fraud, mistake, duress, and waiver—that can be applied neutrally on an international scale."

*Bautista v. Star Cruises*, 396 F.3d 1289, 1302 (11th Cir. 2005) (quoting *DiMercurio v. Sphere*

*Drake Ins. PLC,* 202 F.3d 71, 79-80 (1st Cir. 2000)); *see also Seidel v. TELUS Communications*

*Inc*., [2011] S.C.R. 531, ¶117 (Can.) ("Given that the general rule is that arbitrators should be the

first to consider challenges to their jurisdiction, the expressions 'void', 'inoperative' and 'incapable of being performed' should be interpreted narrowly."); *Kaverit Steel and Crane Ltd. v. Kone Corporation*, 1992 CanLII ABCA 7, ¶ 7 (Can.) (noting that inconvenience, splitting of a dispute between forums, or overlapping litigation, cannot be a valid criterion for assessing whether an arbitration is "inoperative").

Plaintiff's only argument is that the arbitration agreement is invalid because it "fails to clearly and unmistakably reflect that the parties waive their right to a jury trial or any other resolution process." (Pl. Opp. Br. at 5). Plaintiff contends that "Canadian law clearly provides that the right to trial by jury is a substantial right which could not be denied on substantial grounds." (*Id*. at 6). Plaintiff's argument revolves around *King v. Colonial Homes*, in which the Canadian Supreme Court held that the right to a jury trial is a substantive right. [1956] S.C.R. 528, 533 (Can.). That case, however, had nothing to do with an arbitration. *See Id*. Plaintiff does not provide any case law from Alberta, or Canada, that would require an arbitration provision to have language more specific than the language in the instant Contract. Further, Plaintiff does not explain or distinguish how the cases cited by Defendant are not applicable, especially since the arbitration agreements in those cases did not appear to contain the specific waiver language Plaintiff contends that Alberta law requires. (*See* Pl. Opp. Br. at 9); *see also Toyota Tsusho Wheatland Inc. v. Encana Corporation*, 2016 ABQB 209, ¶ 1 (Can.). Rather, the law in Canada is that "[w]here parties have agreed by contract to have an arbitration tribunal decide their claims instead of resorting to the courts, the parties should be held to their contract." *T1T2 Ltd. Partnership v. Canada*, [1994] O.J. No. 2614 (Can. Ont.) (QL); *Seidel*, 2011 SCC 15, [2011] S.C.R. 531, ¶ 23 ("The virtues of commercial arbitration have been recognized and indeed welcomed by our Court in a series of recent decisions. . . ."); *Dancap Productions Inc. v. Key Brand*

*Entertainment Inc.* (2009), 55 B.L.R. (4th) 1 (Ont. C.A.) ¶ 32 (noting that under the ICAA, the Court should refer the parties to arbitration where it is "arguable" that the dispute falls within the terms of the arbitration agreement).

This is not a case where a sophisticated corporation took advantage of an uninformed consumer. *See Muroff c. Rogers Wireless inc.*, 2007 SCC 35 (Can.). The facts as plead in this case support the finding that Plaintiff, a sophisticated Alberta Corporation, negotiated at arm's length through counsel with Defendant, also a sophisticated commercial entity, and that the parties ultimately executed the underlying Contract. (*See* D.E. Nos. 5-2-D.E. 5-4). The parties agreed to be bound by an arbitration agreement that is clear and unambiguous. The provision specifically states that "disputes that are not settled between the Parties *shall* [be] resolved *exclusively* by binding arbitration . . . ." (emphasis added). (*See* Ex. A ¶ 11).

Further, in executing the Contract, Plaintiff signed each page of the agreement, which included the following provision:

> All signatories hereto acknowledge that they have read the foregoing agreement and by their initials and signature that they have full and complete authority to execute the document for and in the name of the "Party" for which they have given their signature.

(Ex. A at 1-12). Thus, by signing the Contract Plaintiff acknowledged that it read the arbitration provision and understood that "disputes that are not settled" would be subject, "exclusively," to a binding arbitration. (*See id. ¶* 11). Plaintiff does not argue that it was fraudulently induced or coerced into signing the agreement. Thus, based on the provision above, the parties' intent to be bound by arbitration in the event of a dispute is clear.

Finally, Plaintiff also ignores that much like the FAA, Alberta law reflects a strong policy in favor of enforcing arbitration agreements. For example, in *Toyota Tsusho Wheatland Inc. v. Encana Corporation*, the court outlined the clear deference by courts in Alberta to the dispute

resolution choices made in a party's contractual agreements.  2016 ABQB 209, ¶ 47 ("As a matter of law and policy, the role of the courts in relation to arbitration has been one of non-intervention.").  Indeed, the Supreme Court of Canada has stated that as a "general rule in any case involving an arbitration clause, a challenge to the arbitrator's jurisdiction must be resolved first by the arbitrator." *Union des consommateurs c. Dell Computer Corp.*, 2007 S.C.R. 34, ¶ 84 (Can.).

In short, the Court finds no reason to void a clear arbitration provision which was the product of an arm's length negotiation by two sophisticated commercial entities.

## IV.    CONCLUSION

For the foregoing reasons, the Court finds the parties entered into an enforceable agreement to arbitrate the instant dispute.  Accordingly, Defendant's motion to compel arbitration is GRANTED and this action is STAYED.  An appropriate Order follows this Opinion.


*s/Esther Salas*
**Esther Salas, U.S.D.J.**